UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DONNY DeSHAWN SMITH,

                            Petitioner,

v.

KEN CLARK, et al.,

                          Respondents.

No. CIV S-08-0673 MJP

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

---

      This matter comes before the Court on Donny DeShawn Smith's petition for a writ of habeas corpus.  (Dkt. No. 1.)  Having reviewed the petition, answer (Dkt. No. 11), the reply (Dkt. No. 13) and the balance of the record, the Court DENIES the petition.

**Background**

      Petitioner Smith is a state prisoner currently residing at the Florence Correctional Center in Arizona.  He seeks relief under 28 U.S.C § 2254 from his 2006 conviction for two counts of lewd and lascivious acts upon a child under the age of fourteen, by use of force or violence and one count of rape by use of force, violence, or menace.  On direct review, the California Court of Appeal (Third Appellate District) described the facts of the case as follows:

          The events underlying defendant's convictions took place shortly after Christmas in 2004 while the victim was temporarily residing with defendant and his wife, Stevenia, the victim's half-sister.  The holidays had been a turbulent time for the victim.  Her mother was in jail.  Her father worked out of town over the Christmas holidays and, angry that the victim had run away and been defiant, told her he was not going to buy her anything for Christmas.  She spent Christmas at a friend's house.  By December 30 one of her half-sisters took her to

Stevenia's apartment, because Stevenia was strict and would not allow her to go out unsupervised.

The victim did not want to stay with Stevenia and pleaded with her father to stay at his home, which was down the street. The victim's desire for release from a strict sister, suggesting a motive to fabricate a rape claim, her character for honesty, and her recent sexual history became the central themes of the defense case. The victim was an easy target in this regard. She had a reputation for lying, and she lied on the witness stand. She was a thief and a truant. She admitted she had sexual intercourse with one of her brother's friends, although she could not remember where, what position they were in, or any pertinent details about the encounter other than that it occurred somewhere between one and three months before the assault. She was rude to the judge, the prosecutor, defense counsel, and the court reporter, and she often repeated how the proceedings irritated her. She mocked her father and resented being forced to stay with Stevenia.

Her account of the events of December 30 was not altogether consistent. On the day of the incident, she begged her father to allow her to come home. He refused. Stevenia left for work. The victim remained at the apartment with defendant, his three children, the victim's brother Baby Joe, and Baby Joe's girlfriend Jackie. While Baby Joe played video games and the other watched, the victim fell asleep on the couch. Sometime later, defendant told her to move to defendant's bedroom and sleep on the bed with her 10- or 11-month old niece.

Baby Joe continued playing video games in a bedroom adjacent to defendant's bedroom. The doors to the two rooms remained open. Defendant went into his room. The victim's various accounts of what happened differ in material respects. When she first appeared in the room with Baby Joe and Jackie, she looked like she had just awakened and said nothing. She left the room and when she returned, she started crying. With prompting, she said defendant pulled her pants down. When Jackie called the victim's father for her, the victim told him defendant raped her. Her father called 911 and took her to the hospital for a medical examination. She told her father defendant penetrated her. She told the nurse practitioner that defendant's penis touched her private parts and that he was "feeling on" her. She told an investigator that defendant lay down next to and behind her, touched her breasts, pushed her onto her stomach, got on top of her, pulled down her pants, and penetrated her twice. She tried to resist by pushing him away with her elbows. Two weeks later, she told an interviewer she and defendant were both lying on their sides and defendant was behind her during the rape.

At trial, the victim could no longer remember whether defendant was on top of her or in what position she was when he penetrated her. She denied pushing him away with her elbows. She claimed she bore no animosity toward defendant and had referred to him as her brother. She admitted leaving the baby on the bed when she left the room after she was raped.

Neither Baby Joe nor Jackie heard any noise in defendant's bedroom. Jackie told an investigator that the night of the incident, defendant had been gone for about 15 minutes before the victim came into the room and broke down crying. At trial she said he was only gone five minutes before the victim appeared.

ORDER - 2

Though her account of the sexual assault had gaps and inconsistencies, the medical examination corroborated the victim's story.  During the genital examination, a pediatric nurse practitioner found three acute tears, ranging from superficial to intermediate, and two of the three lacerations were bleeding.  She opined the lacerations were caused by blunt force trauma, consistent with penetration by a penis.  Wiping with toilet paper would not have caused these injuries.  She explained that because there was no evidence of healing, she believed the injuries had occurred within the previous 8 hours, although they could have been inflicted up to 72 hours before the examination.  She found no sperm on the vaginal swabs she took during the examination.

A prosecution expert on DNA analysis examined two penile swabs taken from defendant at the jail and obtained DNA from cells that are found in body cavities such as the mouth, vagina, and male urethra.  On the first swab, she obtained a full DNA profile matching defendant and a partial profile of a female.  Information from six of fifteen genetic locations matched the victim exactly, and the statistical probability of such a match was one in eight billion African-Americans.  The expert excluded defendant's wife Stevenia as a contributor of genetic material on both swabs.

The DNA expert also tested the boxer shorts defendant was wearing when arrested.  She developed a full DNA profile that matched the victim exactly and must have come from a body fluid other than saliva.

The defense expert on serology and DNA testing posited several different scenarios under which the victim's genetic material could have been transferred to defendant's boxer shorts and penis.  As defendant summarizes on appeal, the victim "could have scratched her labial area, then touched the bed with her hand, after which appellant's boxer shorts could have come into contact with that sport and transferred a few [cells] onto his penis; or appellant's hand could have touched [the victim's] contaminated hand and then touched his own boxers and penis; and/or [the victim's] genetic material on her hand could have come from wiping her nose or from her tears or saliva."  He conceded, however, that the "original source would have to be wet, and the transfer [from hand or vagina to bed to defendant] would have to occur within a relatively short period of time."

(Lod. Doc. 5 (brackets in original).)  On January 11, 2006, a jury found Mr. Smith guilty of two counts of lewd acts by force upon a child under the age of fourteen (Cal. Penal Code § 288(b)(1); counts 1 and 2) and one count of rape by use of force, violence, or menace (Cal Penal Code § 261(a)(2); count 3).  (CT 759-60.)  On March 3, 2006, the trial court sentenced Mr. Smith to a six-year term for the third count and consecutive two-year terms on the first and second counts. (RT 2404-07; Lod. Doc. 2 at 2.)

Mr. Smith appealed arguing the trial court erred by (1) excluding non-hearsay testimony regarding his state of mind before he entered the bedroom and (2) excluding evidence that the

1   victim made prior false claims of abuse.  (Lod. Doc. 2.)  The California Court of Appeal found

2   that the trial court acted within its discretion on both exclusions and affirmed the judgment.

3   (Lod. Doc. 5.)   Mr. Smith filed a petition for review with the California Supreme Court and, on

4   June 27, 2007, that court denied his petition without comment.  (Lod. Doc. 6, 7.)

5           On July 16, 2007, Mr. Smith filed a Petition for Writ of Habeas Corpus with the

6   California Supreme Court.  (Lod. Doc. 8.)  Mr. Smith argued the evidence was insufficient to

7   support a conviction of rape.  (Id.)   The California Supreme Court denied the petition, citing In

8   re Dixon, 41 Cal.2d 756 (1953) and In re Lindley, 29 Cal.2d 709 (1947).  (Lod. Doc. 9.)

9           Mr. Smith filed this timely petition seeking a writ of habeas corpus on March 31, 2008.

10  (Dkt. No. 1.)  Petitioner presents four grounds for relief claiming: (1) there was insufficient

11  evidence to support the conviction of forcible rape; (2) the trial court erred in the failure to admit

12  a non-hearsay statement regarding Mr. Smith's state of mind; (3) trial court error in excluding

13  testimony related to the victim's prior claims of abuse; and, (4) the cumulative effect of these

14  errors deprived Mr. Smith of a fair trial.  (Id.)

15                                      **Standard of Review**

16          The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this habeas

17  corpus petition because it was filed after the Act's effective date of April 24, 1996.  See Lindh

18  v. Murphy, 521 U.S. 320, 326-27 (1997).  Under AEDPA, a writ of habeas corpus is only

19  appropriate if the state court's judgment (1) "resulted in a decision that was contrary to, or

20  involved an unreasonable application of, clearly established Federal law," or (2) "was based

21  on an unreasonable determination of the facts in light of the evidence presented in the State

22  court proceeding."  28 U.S.C. § 2254(d).

23          "Clearly established Federal law" refers to the holdings, not dicta, of the Supreme

24  Court.  Williams v. Taylor, 529 U.S. 362, 407 (2000).  A state court's decision is "contrary

25  to" Supreme Court precedent if the state court either "applies a rule that contradicts the

    governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

1   materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a

2   result different from our [Supreme Court] precedent." Id. at 405-06.  A state court's decision

3   is an "unreasonable application" of Supreme Court precedent if it is "objectively

4   unreasonable," which means that the decision must be "more than incorrect or erroneous."

5   Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  This high standard is met "if the state court

6   identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably

7   applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407.

8   Alternatively, there is unreasonable application of Supreme Court precedent "if the state court

9   either unreasonably extends a legal principle from [Supreme Court] precedent to a new

10  context where it should not apply or unreasonably refuses to extend that principle to a new

11  context where it should apply.  Id.

12       A state court's findings of fact are presumed correct unless rebutted by clear and

13  convincing evidence.  28 U.S.C. § 2254(e)(1).  However, a writ of habeas corpus may be

14  issued if the state court's factual determination was based on "an unreasonable evidentiary

15  foundation." Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003) (citing 28 U.S.C. §

16  2254(d)(2)).

17                              **Discussion**

18       1.  Ground One: Insufficient Evidence to Support Conviction of Forcible Rape

19       Petitioner claims that there was insufficient evidence to support his conviction of

20  forcible rape because the evidence supporting the victim's claims "was extremely ambiguous

21  and subject to varying interpretations."  (Pet. at 3, 6a-6b.)   The California Supreme Court

22  denied these claims citing In re Dixon and In re Lindley and Respondent claims these

23  citations provide an independent and adequate state ground barring federal habeas relief.

24  (Lod. Doc. 9.)  As a general rule, this Court must "not take up a question of federal law

25  presented in a case 'if the decision of [the state] court rests on a state law ground that is

    independent of the federal question and adequate to support the judgment.'" Lee v. Kemna,

1    534 U.S. 362, 375 (2002) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)). The

2    burden of proving that California's procedural bars are independent and adequate falls on the

3    Respondent.  <u>Bennett v. Mueller</u>, 322 F.3d 573, 585-86 (9th Cir. 2003).  Once the state meets

4    its burden, Petitioner may rebut the bar by "asserting specific factual allegations that

5    demonstrate the inadequacy of the state procedure, including citation to authority

6    demonstrating inconsistent application of the rule."  <u>Id.</u> at 586 (further noting that the

7    "ultimate" burden on the issue lies with the state).

8         First, Petitioner's claim is barred under <u>Lindley</u>.  In <u>Lindley</u>, the California Supreme

9    Court held "the sufficiency of the evidence to warrant the conviction of the petitioner is not a

10   proper issue for consideration" in state habeas proceedings.  29 Cal.2d at 723.  In <u>Carter v.

11   Giurbino</u>, the Ninth Circuit determined that the "<u>Lindley</u> rule is not intertwined with federal

12   substantive or procedural law" and, therefore, "<u>Lindley</u> is an independent state ground."  385

13   F.3d 1194, 1197-98 (9th Cir. 2004.).

14        Second, Petitioner's claim is barred under <u>Dixon</u>.  In <u>Dixon</u>, the California Supreme

15   Court reiterated the general proposition that an individual may not use a state habeas

16   proceeding "instead of an appeal to review determinations of fact made upon conflicting

17   evidence after a fair trial."  41 Cal.2d at 759 (citations omitted); <u>see also</u> <u>Protsman v. Plier</u>,

18   318 F. Supp. 2d 1004, 1007-08 (S.D. Cal. 2004) (finding that in post-<u>Robbins</u> cases, the

19   <u>Dixon</u> bar is an independent and adequate state bar to federal habeas relief).  Petitioner does

20   not dispute that he failed to raise this claim in his direct appeal.  (<u>See</u> Reply at 1-2.)

21        To overcome either the <u>Lindley</u> or <u>Dixon</u> procedural bars to federal habeas review, a

22   Petitioner must either show cause and prejudice or demonstrate that the failure to consider the

23   claim will "result in a 'fundamental miscarriage of justice.'"  <u>Harris v. Reed</u>, 489 U.S. 255,

24   262 (1989) (citations omitted).  To show cause, Mr. Smith must demonstrate an "external

25   impediment" such as "government interference or the unreasonable unavailability of the

     factual basis for the claim."  <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991).  Petitioner offers

ORDER - 6

1    no description of any such "external impediment" and, thus, the Court can only conclude that

2    there was none.  (See Pet. at 6a-6b; Reply at 1-2.)   Furthermore, Plaintiff does not provide

3    any "citation to authority demonstrating inconsistent application" of the Lindley or Dixon

4    rules as required under Bennett.  322 F.3d at 586.

5           Third, even if the Court ignored the procedural bars to Petitioner's claim, the evidence

6    presented at trial was sufficient to support conviction for forcible rape.  Evidence is sufficient

7    if "after viewing the evidence in the light most favorable to the prosecution, any rational trier

8    of fact could have found the essential elements of the crime beyond a reasonable doubt."

9    Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  Because the Jackson

10   standard gives the jury the responsibility of resolving conflicts and drawing inferences, "a

11   federal habeas corpus court faced with a record of historical facts that supports conflicting

12   inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the

13   prosecution, and must defer to that resolution."  Id. at 319, 326.

14          In California, a conviction for forcible rape requires proof that a criminal defendant

15   (1) had sexual intercourse with an individual other than the perpetrator's own spouse and (2)

16   completed the act "against a person's will by means of force …on the person."  Cal. Penal

17   Code § 261(a)(2).  During the trial, the victim testified she had been raped by Mr. Smith and a

18   medical examination corroborated the victim's allegations.  (Lod. Doc. 5 at 4-5.)  The

19   victim's DNA was found on the Petitioner and on Petitioner's undergarments.  (Id. at 5.)

20   Viewing the evidence in the light required by Jackson, the evidence was sufficient to support

21   a conviction for forcible rape.

22          Mr. Smith's claim is denied because (1) it is procedurally barred by Lindley, (2) it is

23   procedurally barred by Dixon, and (3) there was sufficient evidence to support a conviction

24   for forcible rape.

25          2.   Ground Two: Whether the Trial Court Erred by Preventing Petitioner from
                 Admitting Evidence Regarding Petitioner's State of Mind

1    Mr. Smith argues the state trial court erred in excluding non-hearsay statements

2  regarding his state of mind.  (Pet. at 8a-8c.)   Mr. Smith sought to introduce testimony from

3  Baby Joe or Jackie who would claim that Mr. Smith told them "he was going to make the

4  victim sleep on the couch or across the foot of the bed" prior to going into the bedroom.

5  (Lod. Doc. 5 at 6-7.)  The California Court of Appeal determined that the trial court did not

6  abuse its discretion when applying California evidentiary principles under People v. Edwards.

7  See 54 Cal.3d 787, 819-820 (evidence permissible under the then-existing mental state

8  exception to the hearsay rule could nonetheless be excluded under Section 1252, which allows

9  exclusion from statements made under circumstances indicating a lack of trustworthiness).

10    This Court does not review questions of California evidence law; rather, it may only

11  determine whether the evidentiary exclusion "reaches constitutional proportions."  Tinsley v.

12  Borg, 895 F.2d 520, 530 (9th Cir. 1990); see also Estelle v. McGuire, 502, U.S. 62, 67-68

13  (1991).  The Court answers this question by applying a multi-factor balancing test evaluating:

14  "(1) the probative value of the excluded evidence on the central issue; (2) it's reliability; (3)

15  whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence or

16  merely cumulative; and (5) whether it constitutes a major part of the attempted defense."

17  Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988,

18  994 (9th Cir. 1985), amended on other grounds, 768 F.2d 1090 (9th Cir. 1985)).   This test

19  balances the state's interest in excluding "unreliable" evidence with a litigant's constitutional

20  right to present a defense.  Id. (citations omitted).

21    The trial court contrasted the reliability of the purported statements with its probative

22  value and excluded the evidence because "the statements were not trustworthy" in light of the

23  declarant's potential motive to cover up his real intentions.  (Lod. Doc. 5 at 7-8.)   The

24  statement was not the sole evidence of Mr. Smith's state of mind: he also put on evidence that

25  he did not close the door to his bedroom to demonstrate he had no motive to commit rape

when he was entering the bedroom.  (Lod. Doc. 5 at 3.)   The record does not indicate that the

1   statements were a "major part" of the defense.  Mr. Smith's case focused primarily on his own

2   expert's testimony to offer alternative explanations for the forensic evidence.  (See Lod. Doc.

3   5 at 5-6 (describing potential scenarios that would explain the DNA samples found).)  The

4   Court's review of the Miller factors indicates the trial court's exclusion of the non-hearsay

5   statements did not reach "constitutional proportions."  Tinsley, 895 F.2d at 530.   Mr. Smith is

6   not entitled to habeas relief on this ground.

7          3.   Ground Three: Whether the Trial Court Erred by Preventing Petitioner from

8               Presenting Evidence that Victim Had Made Prior False Claims of Sexual

9               Abuse.

10          Mr. Smith claims the trial court erred in granting the State's motion in limine to

11   exclude evidence that the victim had previously made two false allegations of abuse.  (Pet. at

12   9a-9b.)  As the Court has stated, this Court will not disturb a ruling based on state evidence

13   law, but must only look to whether any exclusion impinges on Petitioner's due process rights.

14   Tinsley v. Borg, 895 F.2d at 530.   Petitioner's objection relates to the exclusion of two types

15   of evidence.

16          First, after an evidentiary hearing, the Court excluded the testimony from the victim's

17   mother who stated that the victim claimed to have been molested by her father and one of her

18   sister's boyfriends.  (Lod. Doc. 5 at 9.)  The mother, "an incarcerated lifetime drug abuser on

19   psychotropic medication," testified under oath at the hearing that the victim had never made

20   the allegations.  (Lod. Doc. 5 at 9-10.)  The trial court noted that the testimony was

21   problematic because it purported to impeach the victim with a the mother "who is not only the

22   source of all these allegations, but a person who has under oath now denied completely that

23   she ever heard such things from her daughter."  (Lod. Doc. 5 at 10.)   The trial court

24   concluded that the evidence had minimal probative or impeachment value given its doubtful

25   reliability and that the risk of prejudice was great.  (Lod. Doc. 5 at 11.)  The mother's

statement was not the only method of impeaching the victim—the victim had contradicted her

1  own story.  (Lod. Doc. 5 at 4.)   The Court's review of the <u>Miller</u> factors thus indicates that

2  the exclusions did not jeopardize Mr. Smith's due process rights.

3         Second, Petitioner claims the trial court improperly prevented cross-examination of

4  the victim on the issue of the past allegations of abuse.  (Pet. at 9b.)  On another occasion, the

5  victim had apparently stated her sister's boyfriend was "coming on to her."  (Lod. Doc. 5 at

6  11-12.)  Both the trial court and appellate court observed that the "relevancy lynchpin is

7  missing" with the proposed testimony because it makes no reference to a false allegation of

8  sexual abuse.  (Lod. Doc. 5 at 12.)  The evidence had no probative value and would not assist

9  the trier of fact in its evaluation of the victim's credibility.

10        Mr. Smith has not demonstrated that these exclusions impeded his due process rights;

11  his petition on this ground must be denied.

12              4.   <u>Ground Four: Whether the Cumulative Effect of the Errors Denied Mr. Smith</u>

13                   <u>of a Fair Trial</u>

14        Petitioner argues that the "multiple evidentiary errors" combined to deny him of a fair

15  trial. (Pet. at 11a.)   Petitioner's argument is procedurally barred because he failed to raise the

16  alleged violation in his state habeas petition.  <u>See</u> 28 U.S.C. § 2254(b)(1)(A); <u>see also</u> <u>Duncan</u>

17  <u>v. Henry</u>, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary

18  ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth

19  Amendment, he must say so, not only in federal court, but in state court.").  Mr. Smith's

20  application to the California Supreme Court focuses on the insufficiency of the evidence issue

21  presented in his first claim for relief.  (Lod. Doc. 8 at 3.)   This claim is therefore procedurally

22  barred.

23        Even if this Court could reach the merits of Mr. Smith's claim, he is not entitled to

24  habeas relief.  Because the Court has found no underlying constitutional error in Mr. Smith's

25  trial in his first three claims for relief, there can be no cumulative error.  <u>Mancuso v. Olivarez</u>,

292 F.3d 939, 957 (9th Cir. 2002) (citations omitted).

1

**Conclusion**

2          Because Mr. Smith has failed to demonstrate entitlement to relief on any ground

3  presented, the Court hereby DENIES his petition for writ of habeas corpus.

4          The Clerk is directed to send a copy of this order to all counsel of record and to mail a

5  copy to Petitioner.

6  DATED this 24th  day of July, 2009.

7

8

9                                                                Marsha J. Pechman
                                                                 United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 11